### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

JACK A. HANES                                    CAUSE NO:  2:04-cv-0140-RLY-WGH
      Plaintiff

      vs.

JOHN R. GREGG, Interim President of
Vincennes University, in his individual
capacity and in his official capacity;
DALE DOWDEN, University Provost and
Vice President for Academic Affairs, in
his individual capacity;
PHILLIP RATH, Vice President for
Finance and Government Relations, in his
individual capacity;
JIM MESSMER, Vice President for
Statewide Services, in his individual capacity; and
THE BOARD OF TRUSTEES OF VINCENNES
UNIVERSITY in their official capacity
      Defendants


## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Hanes brings a six count Amended Complaint against the Defendants herein.  Those counts are as follows:  Count 1, a claim against Interim President, John R. Gregg, University Provost and Vice President, Dale Dowden, Vice President of Finance and Government Relations, Phillip Rath, and Vice President of Statewide Service, Jim Messmer, all in their individual capacities, for alleged retaliation against Hanes for exercise of his First Amendment rights to free speech, with a request for punitive damages; Count 2, a claim against Interim President, John R. Gregg, in his official capacity, and the Board of Trustees of Vincennes University, in their official capacity for alleged retaliation against Hanes for exercise of his First Amendment rights to free speech, alleging a "practice and policy. " ;

2

Count 3, a claim against Gregg, Dowden, Rath, and Messmer, in their individual capacities for alleged violations of Hanes' procedural and substantive due process rights; Count 4, a claim against Gregg and the Board of Trustees of Vincennes University in their official capacity alleging a violation of Hanes' procedural and substantive due process rights; Count 5, a state claim for breach of contract in refrence to Hanes' alleged academic tenure, including a claim for punitive damages, which does not allege whether it is being brought against the Defendants in their individual or official capacities; Count 6, a state claim for promissary estoppel violations in reference to Hanes' academic tenure, which does not specify whether it is being brought against the Defendants in their individual or official capacities.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can be reasonably resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.E.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2546, 2554, 91 L.Ed 2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

3

Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## I.  THE OFFICIAL CAPACITY DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT, AS A MATTER OF LAW.

Under Count 2 and Count 4 of Hanes' Amended Complaint he asserts claims against the President of Vincennes University (hereinafter referred to as "University") and the Board of Trustees of Vincennes University in their official capacity.  In Counts 5 and 6 of Plaintiff's Amended Complaint he does not specify whether the claim is against the Defendants in their individual or official capacities.  The Interim President and the Board of Trustees, in their official capacities, are entitled to summary judgment on the Plaintiff's claim as:  1) They are entitled to immunity pursuant to the Eleventh Amendment of the United States Constitution; and 2) They do not constitute a "person" within the meaning of §1983.

### A.  The Official Capacity Defendants are immune from liability pursuant to the Eleventh Amendment of the United States Constitution.

In the case at bar, the Defendants would assert that the University is an agency of the State of Indiana and therefore the claims against the Interim President in his official capacity and against the Board of Trustees in their official capacity are barred pursuant to the Eleventh Amendment of the United States Constitution.  The issue to be determined under this argument is whether or not the University is an agency of the State of Indiana.

The University is organized under the laws of the State of Indiana and has the main campus in Vincennes, Indiana.  See Indiana Code §23-13-18- *et seq.*  Pursuant to I.C. §23-13-18-4, the Board of Trustees of Vincennes University consist of ten trustees members. Nine of those  trustees are appointed by the Governor of the State of Indiana, one of whom must be a resident of Knox County, and one must be an alumnus of the University.  In addition, the Governor shall appointed one trustee who is a full-time student at the

4

University.  The powers and duties of the Board of Trustees are outlined pursuant to I.C. §23-13-18-5.  The general duties of the trustees are set forth in I.C. §23-13-18-8.  The trustees of the University  are authorized to issue and sell revenue bonds, pursuant to the criteria as set forth in I.C. §23-13-18-15 and I.C. §23-13-18-17.  All bonds issued under the authority of those statutory provisions are exempt from taxation, including the interest thereon.  See I.C. §23-13-18-27.  Additionally, the University and the trustees are authorized to accept gifts, bequests and devise, pursuant to the terms and conditions of statutes I.C. §23-13-18-24 and I.C. §23-13-18-25.

The University receives the majority of its funding from the Indiana General Assembly.  Specifically, 64% of the University's funding comes from the Indiana General Assembly.  Additionally, the University's finances are carefully examined in deciding the amount of appropriations to give to the entity pursuant to Indiana Budget Agency Act, I.C. §41-12-1-1-*et seq.*  The University's request for appropriations are subject to the commission for higher education, pursuant to I.C. §20-12-0.5-1-*et seq.*   Although the commission specifically has "no power or authority relating to the management, operation, or financing of. . . Vincennes University. . .".  See I.C. §20-12-0.5-11.

The Eleventh Amendment acts as a judicial bar to suit against a state in a federal court, absent the state's consent to the suit.  See Cannon v. University of Health Sciences/The Chicago Medical School, 710 F.2d 351, (7th Cir. 1983) at page 356, and Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.E.2d 662 (1974).

In the case of Kashani v. Purdue University, 813 F.2d 843 (7th Cir. 1987), the court determined whether or not Purdue University was a state agency for purposes of Eleventh Amendment immunity.  The court before engaging on the analysis noted:

5

> In fact, the parties' briefs and our own research have failed to reveal a single circuit court opinion holding a state university not entitled to Eleventh Amendment immunity.

See <u>Kashani v. Purdue University</u>, at 845.   In determining whether an entity is more like a city or county than like  an agency of the state, the single most important factor to be considered is that entity's financial relationship with the state.   See <u>Kashani v. Purdue University</u>, at 845-846; <u>Shannon v. Bepko</u>, 684 F. Supp. 1465, (S.D. Ind. 1988) at 1471.

In the case at bar, the evidence is undisputed that the University receives a large quantity of its income directly from the State of Indiana General Assembly.   In the case of <u>Kashani</u>, approximately one-third of Purdue's income came directly from the State.   In the case of  Vincennes University, at this time, 64% of its income comes from the State of Indiana.  Indiana Budget Agency Act, I.C. §4-12-1-1-*et seq.*, specifically includes within its definition section of "agency of the state" , the" universities and colleges support in whole or in part in by state funds."  See I.C. 4-12-1-2(d).  Vincennes University is required to prepare and file a detailed statement of all expenditures it made in the last  budgetary period or expects to find necessary in the budgetary period, pursuant to that act.

The University has no power to levy taxes.  Thus, it lacks the ability that cities and counties  typically have to require payment in the form of taxation.  Pursuant to <u>Kashani v. Purdue University</u>, the absence of the power to tax is a strong indication that an entity is more like an arm of the state, then like a city or county.  *Ibid* at 846.

The other consideration, in determining with the University is an agency of the state, is the University's general legal status.  In the case bar, Vincennes University's trustees are selected by the Governor of Indiana.  See I.C. §23-13-18-4.  Additionally, the Indiana legislature clearly retains the power to amend or repeal the duties and powers of the trustees through future legislation.  See <u>Shannon v. Bepko</u>, at page 1473.  The powers and duties of

the Board of Trustees are established and limited by statute.  Therefore, in the case at bar, the facts clearly show that the University is a state agency, and that the Indiana General Assembly and the Governor's office retains significant control over  the University's budget and general legal status.  Therefore, the University should be considered a state agency for purposes of Eleventh Amendment immunity.

Purdue University has been determined to be a state agency for purposes of Eleventh Amendment immunity in the cases of  Kashani v. Purdue University, *ibid*; Wellman v. Trustees of Purdue, 581 F.Supp. 1228 (N.D. Ind. 1984).  Ball State University has been determined to be a state agency for purposes of Eleventh Amendment in the case of Riggin v. Board of Trustees of Ball State University, 489 N.E.2d 616, 626 (Ind.Ct.App.1986). Indiana University has been determined to be a state agency for purposes of Eleventh Amendment immunity in the cases of Colburn v. Trustees of Indiana University, 739 F.Supp. 1268 (S.D. Ind. 1990) and Shannon v. Bepko, 684 F.Supp. 1465 (S.D. Ind. 1988).

The Eleventh Amendment acts as a judicial bar to suit against the state in federal court, absence the state's consent to the suit.  It is anticipated that Hanes would argue to the Court that the University has consented to suit pursuant to I.C. §23-13-18-1.  However, that argument has specifically been rejected by the Seventh Circuit Court of Appeals in the case of Cannon v. University of Health Sciences/The Chicago Medical School, 710 F.2d 351, (7th Cir. 1983), wherein, the Court noted in footnote numbered 5:

> FN5.  Cannon does not argue on appeal that the State consented to suit.  The only possible basis of consent would be the statutory provision authorizing the University of Illinois to 'sue and be sued.'  Ill.Rev.Stat. ch. 144, §22 (1979). We concur with those courts holding that such a statutory provision does not constitute 'consent.'  *Hamilton Mfg. Co. v. Trustees of State of Colleges*, 356 F.2d 599, 601-02 (10th Cr.1996); *Love v. University of Illinois*, 76 C 954 (N.D.Ill.Feb. 7, 1978).

7

Applying the Seventh Circuit authority to the case at bar, the statutory provisions of I.C. 23-13-18-1, would not constitute consent by the State of Indiana to suit.

Therefore, this Court should find that Vincennes University, like Purdue, like Indiana University, like Ball State University, and like IUPUI, is indeed an instrumentality of the state such that it is entitled to assert Eleventh Amendment immunity.

The next question, of course, is whether or not the Interim President, in his official capacity, and the Board of Trustees, in their official capacity are protected by the immunity provision of the Eleventh Amendment.  The case law is abundantly clear that they are.  In the case of Cannon v. University of Health Sciences/The Chicago Medical School, *ibid*, the Seventh Circuit stated at page 357:

> The Eleventh Amendment is applicable even though Cannon has attempted to name individual representatives of the universities, as well as the institutions themselves, as defendants.

In Kashani v. Purdue University, the Seventh Circuit stated at page 848:  ". . . the Eleventh Amendment bars all claims against Purdue and the damages claims against its officials in their official capacities. . ."  In Shannon v. Bepko, the court stated at page 1473-1474: "As a general matter the named defendants in the case at bar are entitled  to assert Indiana University's Eleventh Amendment immunity because they are being sued in their 'official capacities.'"  In Colburn v. Trustees of Indiana University, 739 F.Supp. 1268 (S.D. Ind. 1990), the court stated at page 1280:

> Similarly, Indiana University in its official capacity actors are immune from suit for damages in federal court by virtue of the current interpretation of the Eleventh Amendment.

The court therein cites to the Cannon Seventh Circuit case.

Therefore, any damages claims against the Interim President, in his official capacity, or the Trustees of the University, in their official capacities, which would include Counts,

8

2, 4, 5, and 6, should be dismissed for lack of jurisdiction pursuant to the Eleventh Amendment of the United States Constitution.

### B. The Official Capacity Defendants are not "persons" within the meaning of §1983.

Hanes brings this action for alleged deprivation of his civil rights in Counts 2 and 4, pursuant to 42 U.S.C. §1983. See paragraph 2 of Hanes' Amended Complaint. In the case of Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45, (1989), the United States Supreme Court specifically held that: ". . .a State is not a 'person' within the meaning of §1983. . ." See Will at 491 U.S. 65-66, 109 S.Ct. 2309-2310.

The Will court goes on to specifically hold that individuals named in their official capacity, are also not "persons" under the federal civil rights statute. In Will, the United States Supreme Court stated at page 71:

> Obviously, state officials literally are person. But a suit against a state official in his or her official capacity is not suit against the official but rather is a suit against the official's office. (Citations Omitted). As such, it is no different from a suit against the State itself. (Citations Omitted). We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

> We hold that neither a State nor its officials acting in their official capacities are 'persons' under §1983.

The United States Supreme Court ruling in the case of Will is applicable in the case at bar. The Will decision has already been applied to universities and their official capacities defendants in the state of Indiana. In Colburn v. Trustees of Indiana University, 739 F.Supp., 1268 (S.D. Ind.1990), the court stated at page 1280:

> Accordingly, it appears that the plaintiff cannot recover compensatory damages from Indiana University nor from the official capacity defendants because they are not 'persons' under §1983.

9

Applying these authorities to the case at bar, the official capacity defendants are entitled to summary judgment on the Plaintiff's claims pursuant to §1983 under Count 1 and Count 4 of his Amended Complaint filed herein as they are not "persons" under §1983.

## II.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW.

Hanes in Count 1 of his Amended Complaint brings a claim for alleged violation of his First Amendment rights to freedom of speech against Gregg, Dowden, Rath, and Messmer, in their individual capacities. In Count 3 Hanes brings a claim against the individuals for alleged violations of his due process rights.   This Court should grant the individual summary judgment on Count 1 and Count 3 of Hanes' Amended Complaint, as well.

### A. The Individual Defendants are entitled to Eleventh Amendment Immunity

The Defendant would assert that the Defendants, Gregg, Dowden, Rath, and Messmer, in their individual capacities, are entitled to the Eleventh Amendment immunity as well.  In the Seventh Circuit court case of <u>Cannon v. University of Health Sciences/The Chicago Medical School</u>, 710 F.2d 351, (7th Cir. 1983), the court stated:

> The Eleventh Amendment if applicable even though Cannon has attempted to name individual representatives of the universities, as well as the institutions themselves, as defendants.
>
> . . .
>
> In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court held that the Eleventh Amendment bars a suit 'by private parties seeking to impose a liability which must be paid from the public funds in the state treasury.'  *Id.* at 663, 94 S.Ct. at 1356.  Relying on *Ford Motor co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), the *Edelman* Court reasoned that if the damage award is to be paid by the State, the State is the real party interest even though individual officials might be named as nominal defendants. 415 U.S. at 663, 94 S.Ct. at 1355.  In this case, because the state universities are the alter ego of the State, any damage award chargeable to university assets is an award against the State itself.  No authority supports Cannon's argument that this analysis is altered by the

10

possibility that a damage award would be met through insurance proceeds or from federal funds.  If Cannon's suit would result in a damage award payable by the universities, it is barred by the Eleventh Amendment.

Cannon's allegations pertain to the enforcement, by university authorities, of university policies that allegedly condoned discrimination on the basis of age with the resulting disparate impact on women.  Recovery is sought from the institutions, not the individuals.  As the Supreme Court observed in *Edelman*, it is a 'virtual certainty [that any damage award will] be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action.'

In the case at bar, all of Hanes' allegations contained in his Amended Complaint (which are numerous) pertain to actions taken by Gregg, Dowden, Rath, and Messmer, within the scope of their duties at the University.  Although the Amended Complaint names them as being in their "individual" capacity, they appear to be named as nominal defendants in this case.  All their actions complained of are clearly within the scope of their employment at the University and recovery is obviously sought from the institution, and not from the individuals themselves.

I.C. 34-13-4-1 provides that the governmental entity may pay the judgment against a public employee acting within the scope of his duties in claims for alleged civil rights violations.  Therefore, any damage award against the individual defendants for alleged civil right violations presumably will not come from those individual's pockets, but, from State Funds.

Thus, based upon the authority of <u>Cannon</u> and <u>Edelman</u>, this Court should grant summary judgment to the Defendants herein on the Plaintiff's Amended Complaint against the Defendants in their individual capacities.

**B. The Individual Defendants are entitled to Qualified Immunity.**

The doctrine of qualified immunity provides that individual defendants performing discretionary functions are protected against suits from damages unless their conduct violates

11

clearly established statutory or constitutional rights of which a reasonable person would have known.   See <u>Colburn v. Trustees of Indiana University</u>, 739 F.Supp. 1268, 1299 (S.D. Ind.1990); <u>Propst v. Bitzer</u>, 39 F. 3d 148, (7th Cir.1994).  In the case of <u>Lawshe v. Simpson</u>, 16 F.3d 1475 (7th Cir.1994), the court stated, quoting from <u>Casteel v. Pieschek</u>, 3 F.3d 1050, 1053 (7th Cir.1993):

> In determining whether the right alleged to have been violated was 'clearly established,' the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation.  In other words, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  The plaintiff bears the burden of showing that the constitutional right allegedly violated was clearly established before the defendant acted or failed to act.  This requires the plaintiff to offer a closely analogous case or evidence that the defendant's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts.  To determine the applicability of qualified immunity, the defendant's actions must be compared to what a reasonable official would believe was required in light of the clearly established legal rules. . . .

Applying this standard to the case at bar, the Individual Defendants would be entitled to qualified immunity.

The Defendants' position in this case that Hanes' voluntarily accepted a new job in administration and voluntarily resigned from his faculty department position, and thus lost his academic tenure, has not appeared to have arisen in any other cases in this Circuit.  The fact that the University Manual specifically said that a employee with tenure who transfers from one department to another department or from faculty to administration, losses that tenure, is a provision which to the undersigned's knowledge has never been challenged as a violation of due process.  Hanes bears the burden of showing that the constitutional right allegedly violated was clearly established, under the circumstances of this particular case, so that the individual defendants or other reasonable officials, would have know, without guidance from the courts, that their conduct would violate clearly established rules.  The

12

Defendants would assert that refusing to allow administrative officials to return to academic position or faculty, after serving in the administration for a period in excess of three years, was not a clearly established legal right such that a reasonable official would believe that his actions would violate constitutional principles. Therefore, the individual defendants in the case at bar are entitled to summary judgment as they are entitled to qualified immunity on Hanes' claims for damages. See also Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

**C. There is No Evidence to Support the Individual Claims Under Section 1983.**

Hanes brings action against the individuals for alleged civil rights violations pursuant to Section 1983. In the case of Curry v. Pulliam, 234 F.Supp.2d 921, (S.D.Ind. 2002), this Court stated at page 927:

> As to Mr. Curry's individual capacity claims under section 1983, while that statute authorizes actions against individuals, it also requires individualized proof that the named official was directly responsible for the improper conduct, *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983), and 'knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act.' *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986). *See McPhaul v. Board of Com'rs of Madison County,* 226 F.3d 558, (7th Cir. 2000). Even assuming that Mr. Curry has presented evidence that his rights have been violated, he has made no allegation that any of the named individuals meet the criteria for individual liability pursuant to section 1983. Nor, has he presented evidence from which a jury could reasonably infer that any of the named individuals 'knowingly,' willfully' or 'recklessly' caused the deprivation of his rights.

Hanes amended complaint does not set forth any evidence that the individual Defendants acted in any manner, other than within the scope of the duties as employees of the University. There is no evidence in the record from which a jury could infer that the individual Defendants "knowingly," "willfully," or "recklessly" caused the deprivation of Hanes' rights. Thus, the Court should enter summary judgment, as it did in the Curry case, to the individual Defendants, herein.

13

**III. THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON HANES' FIRST AMENDMENT CLAIMS AS SET FORTH IN COUNTS 1 AND 2 OF HIS AMENDED COMPLAINT.**

First Amendment claims by public employees asserting a violation against protected speech are analyzed under a two step test. The test, was set forth in the United Supreme Court case of Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 684, 75 L.Ed.2d 708 (1983). The first step under the Connick analysis is to determine whether the employee speaks "as a citizen upon matters of public concern." The second step is to balance the "interest of the employee, as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer promoting the efficiency of the public services it performs through its employees. See also Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In determining whether speech is protected at step one, the Court must consider the content, form, and context of the speech. See Connick at 461 U.S. 147, 103 S.Ct. 1684. In each prong, the issue is a question of "law to be decided by the Court, not the jury," even though factual determinations may be involved. See Biggs v. Village Dupo, 892 F.2d 1298, 1301 (7th Cir.1990) (quoting from Connick 461 U.S. at 148 footnote 7, 103 S.Ct. at 1690 footnote 7. Further, there is no any evidence in this case that Hanes' speech was a substantial or motivating factor in the University's decision to terminate him as required by Roberts v. Broski, 186 F.3d 990,995 (7th Cir. 1999)

**A. Hanes' speech is not subject to First Amendment Protection.**

Under an analysis of the first prong of the test, i.e., whether an employee speaks "as a citizen upon matters of public concern," Hanes' First Amendment claims fail. The allegations regarding Hanes' First Amendment claims are set forth in the Designation of Undisputed Fact in Support of Motion for Summary Judgment in paragraph 40 through 60.

14

Specifically, Hanes alleges that he spoke out on six different issues or subject matters which are as follows:  A) The University providing poor services to student, B) Hanes' opinion that the University was moving toward  admitting less qualified students for financial reasons; C) Hanes' advise  that the University needs to comply with federal law and not pay admission people on an incentive or commission type compensation pay structure; D) Hanes' reporting of an incident involving alleged  falsified applications in the early summer of 2003; E) Hanes' report on the impact of the Community  Colleges in Indiana Program on the University's Enrollment; and F) Hanes' explanation of recruitment guidelines to administrators to avoid college fairs becoming "carnival like."

On many of these subjects, Hanes alleges that he "probably" had general "coffee pot discussions" with some of his staff or colleagues.  These "coffee pot discussions" do not rise to First Amendment Protection.  In a recent case from the Seventh Circuit, that of <u>Trejo v. Shoben</u>, 319 F.3d 878 (7th Cir.2003), the court therein stated:

> 'Casual chitchat between two persons or otherwise confined to a small group . . . is not protected' under the First Amendment.

The court therein cites to the case of <u>Swank v. Smart</u>, 898 F.2d 1247, 1251 (7th Cir. 1990). Thus, Hanes' "probable" comments at coffee pot discussions are not protected under the First Amendment.

Regarding the first subject as enumerated in the Designation of Undisputed Facts, Hanes' opinion that the University was providing poor services to students, Hanes alleges that he made those comments at Deans' meetings held by Provost Dowden and attended by all of the Deans, the Assistant Provost of Academic Affairs, and the Assistant Provost of Student Affairs.  He also may have made statements to Interim President Gregg and to his staff in the enrollment management office.  Hanes made these statement regarding discussions on increasing enrollment.  Hanes further made these statements in his position as Assistant

15

Provost of Enrollment, which included responsibilities and oversight for the entire enrollment management operation of the University.  See Designation of Undisputed Facts, ¶19.

Hanes' second subject matter on which he claims he spoke out, i.e., his opinion that the University was moving toward admitting less qualified students for financial reasons and students that in his opinion lack the "ability to benefit" from the University program, were made to the Vice President and Assistant Provost in a meeting when discussing ways to enhance enrollment.

Hanes alleges that he spoke out on the University's need to comply with federal law and not place commission people on an incentive or commission type compensation pay structures.  He alleges that he made statements on this issue only to Phillip Rath, the Vice President for Finance of the University, throughout his tenure as Assistant Provost for Enrollment.

Hanes also claims that he spoke out or reported  an incident involving falsified applications in the early summer of 2003.  He reported this to Provost Dowden.  Provost Dowden followed up with both the students and the alleged staff involved.  Hanes spoke out on this issue only one time with Provost Dowden.  Although  Hanes subsequently attended some meetings on the issue, he attended as an "observer."

Hanes claims that he prepared a report, pursuant to his duties in his position  as Assistant Provost for Enrollment, on the impact of the Community Colleges in Indiana Program on the University's enrollment.  He spoke or issued copies of his report with administrators, including the President, Vice President, Provost, and Deans of the University.

Finally, Hanes alleges he spoke out on Recruitment Guidelines to Administrators to avoid college fairs from becoming carnival like.  He avers that he spoke on this issue to the vice president and president of the University during his meeting with them.

16

Clearly, all of Hanes' discussions and reports on all of the subject matters and issues that he claims he "spoke out on" were within the scope of his duties as Assistant Provost for Enrollment.  On each and every occasion, he spoke only to other administrators at the University while discussing enrollment, the office and position for which he had responsibility.  He does not allege at any time that he attempted to expose the issues to the public or educate the public, in general, on the issues.  He spoke only to other administrators within the scope of his duties and employment of Assistant Provost of Enrollment.

In the case of <u>Gonzalez v. City of Chicago</u>, 239 F.3d 939 (7th Cir. 2001), the plaintiff, <u>Gonzalez</u>, worked as a civilian employee, who investigated public complaints against police officers for the Chicago Police Department.  <u>Gonzalez</u> sued the City of Chicago claiming that the defendants retaliated against him for his speech as an investigator on the public complaints.  In that case, the court stated at page 941-942:

> Thus, the question before us is whether a public employee receives First Amendment protection for producing writings that may address matters of public concern, but are also a routine requirement of the job.  Gonzalez may well have been motivated in part as a good citizen when he accepted the employment duties of reporting police misconduct.  <u>Nevertheless, he was clearly acting entirely in an employment capacity when he made those reports. The form of his speech (routine official reports), the content of the speech (required opinions on misconduct), and the context (pursuant to duties of the jobs), all indicate that Gonzalez did not speak 'as a citizen' on a matter of public concern.</u>
>
> . . .
>
> All of Gonzelez's speech at issue--the written reports--was mandated in his capacity as an OPS investigator.  While police misconduct is certainly a matter of public concern, the internal reports were simply a summary of his finding following his official investigations.  The few courts that have addressed circumstances like these have found that the speech was not protected by the First Amendment. *See, e.g., Koch v. City of Hutchinson*, 847 F.2d 1436 (10th Cir.1988), *cert. denied,* 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988) (routine report of fire marshal regarding cause of a fire did not address a matter of public concern); *Cahill v. O'Donnell*, 75 F.Supp.2d 264 (S.D.N.Y.1999) (speech by police department Internal Affairs employees made in course of 'day-to-day professional obligations' not protected).  We agree with these

17

holdings.  <u>Speech which is made in all respects as part of the employee's job duties is generally not the protected expression of the public employee. 'Speech that relates primarily to . . . internal office affairs, in which the individual speaks as an employee rather than as a citizen' is not protected by the First Amendment</u>.  *Id.* at 272.  (Emphasis Added).

The <u>Gonzalez v. City of Chicago</u> holding is applicable in the case at bar.

In the case at bar, all of Hanes' speech was related and  in all respects was made as a part of Hanes' job duties in general and was not the protected expression of the public employee.  Hanes was not speaking out "as a citizen"on a matter of public concern.  Therefore, this Court should grant summary judgment on Hanes' First Amendment claims in Count 2 and Count 4 of the Amended Complaint filed herein.

A similar holding was made in the case of <u>Colburn v. Trustees of Indiana University</u>, 973 F.2d 581 (7th Cir.1992).  In that case, faculty members of Indiana University filed suit against the Trustees of Indiana University alleging that they were denied promotions, reappointments, and tenure in violation of their rights to free speech and due process.  In that case, the plaintiffs had written letters requesting an external review of the sociology department peer review committee.  The letters were sent to university officials only.  The court therein  noted that the record demonstrated that the plaintiffs' goal was not to bring the hostility in the sociology department to public light.  In reference to the forum of their speech, the court noted at pages 587-588:

> Their concerns, however, were not aired in a community or other public forum, but in a forum internal to the University--letters to University officials.

The court in <u>Colburn</u> found that the plaintiff's speech was not subject to First Amendment protection.

18

Similarly, in the case at bar, the speech by Hanes were not aired in open forum, the speech in this case was made internally, to various deans and administrators.  There is nothing in the record indicating that the public was either aware of or interested in these events.

In fact, in reference to the alleged "speaking out" on the falsified applications, Hanes acknowledges that the only connection between his speech on this issue, and his ultimate termination from the University, was the "timing" of the events.  See Designation of Undisputed Facts, ¶56.  However, the law is well established that a mere chronological relationship between an employee's speech and his discharge alone does not give rise to an inference that the speech motivated the employment decision.  See O'Connor v. Chicago Transit Authority, 985 F.2d 1362, 1368 (footnote 3); Roberts v. Broski, 186 F.3d 990 (7th Cir.1999) at page 995; Connick, *supra* at 461 U.S. 138, 145-47.

Likewise, in the case of Knapp v. Whitaker, 757 F.2d 827 (7th Cir.1985), the Court of Appeals reversed a jury verdict in part, finding that some of the freedom of speech claims were not subject to First Amendment protection.  Therein, the court stated at page 840:

> Knapp's speech on these issues was not an attempt to inform the public that the administrators in District 150 were failing to discharge their governmental responsibilities.  Moreover, Knapp's speech on these subjects was not aimed at uncovering a wrongdoing or breach of the public trust among Peoria School District administrators.  Instead, Knapp simply disagreed with certain internal decisions made by his immediate superiors at Woodruff High School.  While principal McDavid, as a matter of good judgment, should have been receptive to any constructive criticism offered by Knapp, 'the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.'  *Connick*, 461 U.S. at 149, 103 S.Ct. at 1691.  Accordingly, based upon the content, form, and context of Knapp's complaints about classroom assignment and evaluation content, we hold that such speech is a matter of personal concern, not a matter of public concern.

All of these above cited authorities are applicable in the case at bar.

19

Hanes' speech in the case at bar was limited to other administrators, staff, and deans. The purpose of his speech was not to educate or enlighten the public on these issues.  The purpose of his speech was simply to fulfill  his duties and responsibilities as Asst. Provost for Enrollment at the University.  He spoke on issues directly related to that position and only to fellow administrators within the realm and scope of their duties.  Hanes did not speak on these issues as a private citizen on a matter of public concern..  As Hanes' speech was not subject to First Amendment protections, this Court should grant summary judgment to the Defendants herein on Counts 1 and 2 of the Plaintiff's Amended Complaint.

### B.  The University's Right to Academic Freedom and Public Service Interest Outweigh Hanes' First Amendment Rights

Under the second analysis or prong of <u>Connick</u> and <u>Pickering</u>, the court must balance the "interest of the employee, as a citizen, in commenting on matters of public concern and the interest of the state, as the employer, in promoting the efficiencies of the public services it performs through its employees."  See <u>Pickering v. Bd. of Edu.</u>, 391 U.S. 563, at 568, 88 S.Ct. 1731.  In the case at bar, the Defendants are the trustees or employees of a state university.  In the case <u>Feldman v. Ho</u>, 171 F.3d 494 (7th Cir.1999), *cert. denied* 528 U.S. 928, 120 S.Ct. 323, 145 L.Ed.2d 252, the court stated:

> <u>A university's academic independence is protected by the Constitution, just like a faculty member's own speech.  Concurring in *Sweezy v. New Hampshire*, 354 U.S. 234, 263, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957), Justices Frankfurter and Harlan referred to the four freedoms *of a university:*  'to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study.'</u>  Although statutes have curtailed some of these freedoms (for example, no university today may use racial criteria to be select its faculty), Feldman doe not rely on any particular statute, as opposed to the all-purpose 42 U.S.C. §1983 that provides a hook for enforcing the Constitution against state actors.  <u>Yet the Constitution does not commit to decision by a jury every speech-related dispute.  If it did, that would be the end of a university's ability to choose its faculty--for it is speech that lies at the core of scholarship, and every academic decision is in the end a decision about speech</u>.  (Emphasis Added).

20

These academic freedoms as enunciated in the <u>Sweezy v. New Hampshire</u> and <u>Feldman v. Ho</u> cases are also articulated in a Indiana State Court of Appeals decision, i.e., <u>Riggin v. Bd. of Trustees of Ball State University</u>, 989 N.E.2d 616 (Ind.Ct.App.1986) at pages 629-630. These authorities are applicable in the case at bar.

In the case at bar, the University's academic independence is also protected by the constitution.  The University is entitled by law, and the Constitution, to the four freedoms sometimes referred as the academic freedoms, i.e., to determine for itself on academic grounds 1) who may teach; 2) what may be taught; 3) how it shall be taught; and 4) who may be admitted to study.  In conducting a balancing test under <u>Pickering</u> between Hanes' free speech and the University's academic freedoms, the University is entitled to summary judgment, as a matter of law.

On the first subject matter, Hanes' opinion that the University was providing poor services to students, clearly falls within the four freedoms of the University, i.e., "how it shall be taught."  Therefore, the rights of the University outweighs Hanes' First Amendment rights on that issue.  Hanes' speech on the University admitting students, who in his opinion, did not have the "ability to benefit" from the University's programs, also falls within the four freedoms of the University, i.e., to determine, "who may be admitted to study."  The remaining issues on which Hanes spoke out, i.e., the need to comply with federal law regarding admission employees; reporting on the falsified applications; Hanes' explanation of recruitment guidelines to administrators; and his report on the impact on the impact of the Community Colleges in Indiana Program on the University's enrollment, were simply opinions and reports made and done within the scope of his employment.  There is no evidence in the record that Hanes' ultimate termination was in any way related to his speech on these issues.  In this case, Hanes speech is all related to the way in which the University

21

handles its core of business of soliciting and admitting students, i.e. enrollment.  This type of speech is so central to the University's mission that the University's role as the employer dominates.  See <u>Feldman v. Ho</u> at page 497-498.  In the <u>Feldman</u> case, the court gives an excellent example of the distinction between protected speech and unprotected speech, when it discusses the situation of an employee's speech  in reference to a campaign for a candidacy for governor, it would be protected speech.  However, if the speech was neither unrelated to his job nor unrelated to his department (in that case mathematics, in this case, enrollment) then the University's role as the employer dominates.  See <u>Feldman</u> at 497-498.

Under the second prong of the analysis of <u>Connick</u> and <u>Pickering</u>, the University and its employees, both in their official and individual capacities are entitled to summary judgment.  As the court noted in <u>Feldman v. Ho</u>, when a government or university is "employing someone for the very purpose of effectively achieving its goals, some restrictions on their speech, may well be appropriate."  Therefore, the Employer/Defendant's interest and rights  outweigh any First Amendment rights that the employee/Hanes may have.

### C.    Hanes' Speech was Not a Substantial or Motivating Factor in his Termination.

Finally, there is no evidence in the record that Hanes' speech was a substantial factor, or in fact, any motivating factor, in the University's decision to terminate him.  In order to establish a violation of his First Amendment rights, Hanes ultimately would have to prove by a preponderance of the evidence that his speech was a substantial or motivating  factor in the University's decision to terminate him.  Therefore, faced with the Motion for Summary Judgment, Hanes has to produce evidence from which a jury could reasonably discern a link between his speech and the discharge or termination decision.  See <u>Roberts v. Broski</u>,  186 F.3d 990, 995 (7th Cir. 1999).  As previously stated, a mere chronological relationship between an employee's speech and his discharge alone, does not give rise to inference that

22

the speech motivated the employment decision.  Roberts v. Broski, *ibid* at 995; O'Connor v. Chicago Transit Authority, 985 F.2d 1362, 1368 (7th Cir.1993).

In the case at bar, there is no evidence that any of Hanes' alleged speech issues were in anyway related to his discharge.  Hanes must come forward with some designation of evidence or identification of evidence that would establish a nexus between his speech and his ultimate termination above and beyond the alleged chronology of the events.  Because Hanes can identify evidence from which a jury could reasonably infer that his speech was a substantial motivating factor in the University or the individuals' decisions to discharge him, this Court should grant summary judgment to the Defendants herein on Hanes' First Amendment claims set forth in Counts 1 and 2 of his Amended Complaint.

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON  COUNTS 3 AND 4 HANES' SUBSTANTIVE AND PROCEDURAL DUE PROCESS CLAIMS AGAINST THE DEFENDANTS.

In Count 3 Hanes alleges claims against the individuals Gregg, Dowden, Rath, and Messmer for violation of his substantive due process and procedural due process rights. [See Plaintiff's Amended Complaint, ¶¶136-137 and142].  Hanes claims that the Defendants violated his procedural and substantive due process rights when they deprived him, without the due process of law, of his tenure property rights.  Specifically, he alleges that he maintained tenure academic property rights. [Plaintiff's Amended Complaint, ¶¶127-128, 135 and 138].  Hanes' argument on this seems to be twofold.  First, he appears to argue that the University deprived him of his tenure academic property rights when he accepted the position of Assistant Provost of Enrollment and lost his right to return to teaching in the Broadcasting Department.  Secondly, Hanes appears to argue that they violated his academic tenure rights when they terminated him.

23

In Count 4 of his Amended Complaint, Hanes brings action against Gregg and the Trustees in their official capacities.  More specifically, Hanes alleges that the official capacity defendants had a practice and policy that deprived faculty that "assumed" administrative positions of their academic tenure without the due process of law. [Hanes' Amended Complaint, ¶¶145 and 146].  Hanes goes on to allege that Gregg and the Trustees, in their official capacity, violated his due process rights by recommending the termination and by "acquiescing", "condoning", and "ratifying" the recommendation of his termination. [Hanes' Amended Complaint, ¶¶147 and 150].  As in Count 3, Hanes alleges violations of both his procedural due process and substantive due process rights. [Hanes' Complaint, ¶148].  Hanes alleges as his damages, in addition to the standard damages of loss of employment benefits, also damages for embarrassment, humiliation, damage to professional reputation, and future opportunity for income.

### A. Official Capacity Defendants are entitled to summary judgment pursuant to the Eleventh Amendment.

As previously argued herein, the official capacity defendants are entitled to summary judgment on Hanes' §1983 due process violations.  See Wisconsin Department of Corrections v. Schacht, 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) and Curry v., Pulliam, 234 F.Supp.2d 921, (S.D.Ind.2002), where in the court stated:

> In a case such as this one, the conduct of the named employees in their official capacities *is* the conduct of Greater Clark, and the Eleventh Amendment simply does not allow damages suits against states, state agencies, or state employees acting in their official capacities.  *Will v. Michigan Department of State Police*, 491 U.S. 58 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir.2000); *Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir.1997).

Both of these cases involve allege violation of due process rights, as did many of the authorities cited by the court in Curry v. Pulliam.  In sum the "official capacity defendant", Gregg and the Board of Trustees are entitled to summary judgment pursuant to the sovereign

24

immunity provision of the Eleventh Amendment of the United States Constitution.

**B.  The official capacity defendants are entitled to summary judgment as they are not "persons" within the meaning of §1983.  The individual defendants are entitled to summary judgment pursuant to the Eleventh Amendment and the doctrine of qualified immunity.**

The undersigned will not reiterate the arguments as made above, but the "official capacity" defendants are not persons within the meaning of §1983 under which Hanes brings his due process claim.  The individual defendants are entitled to summary judgment pursuant to the Eleventh Amendment and the doctrine of qualified immunity as argued above.

**C.  The Defendants herein are entitled to summary judgment on Hanes' claims for violation of substantive due process as tenured public employment is not a fundamental property interest entitled to substantive due process protective.**

Hanes claims that the University deprived him of his property interest in tenure without the due process of law.  He appears to argue they deprived him of this right on two occasions, 1) When he accepted the position of Provost of Enrollment in Administration and lost his academic tenure, and 2) When he was offered and turned down another administrative position with the University and was thereafter terminated for insubordination.  Under either theory, Hanes fails to state a substantive due process claim as tenured public employment is not a fundamental property interest entitled to substantive due process protection.

Hanes' claim for substantive due process, as he alleges in his Amended Complaint, is separate and distinct from his First Amendment Constitutional violations.  He substantive due process claim would have to be separate, as if it was based on his alleged First Amendment violations, it would be simply a repeat claim of that First Amendment violation claim, and therefore, would be barred.  See Eby-Brown Co., LLC v. Wisconsin Dept. of Agriculture, 295 F.3d 749, 754 (7th Cir.2002); Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 124 L.E.2d 114 (1994); and Curry v., Pulliam, *ibid* at 927.

25

Instead, Hanes is claiming a fundamental property interest in his tenured public employment, academic or otherwise, and alleging that the University's deprivation of that right without the due process of law is a violation of substantive due process.  However, the majority of all the Circuit Courts, including the Seventh Circuit have held that a tenured public employment right, academic or otherwise, is not a fundamental property interest entitled to substantive due process protection.

A substantive due process claim can arise in two situations, 1) When a plaintiff challenges the validity of a legislative act; and 2) When a Plaintiff challenges a non-legislative state action.  The Third Circuit recently set forth an opinion with an excellent analysis of substantive due process law and framework.  In the case of Nicholas, M.D. v. Pennsylvania State University, 277 F.3d 133 (3rd Cir.2000), a tenured university professor brought action against the university and his former supervisor following his termination, alleging violation of procedural and substantive due process.  In that case, the plaintiff/professor asserted a property interest in his tenured professorship.  He asserted that his property interest was entitled to substantive due process protection.  The Third Circuit stated at page 142:

> To summarize: when a plaintiff challenges the validity of a legislative act, substantive due process typically demands that the act be rationally related to some legitimate government purpose.  In contrast, when a plaintiff challenges a non-legislative state action (such as an adverse employment decision), we must look, as a threshold matter, to whether the property interest being deprived is 'fundamental' under the Constitution.  If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used.  If the interest is not 'fundamental,' however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process.

> With this framework in mind, we turn to whether Nicholas's tenured public employment is a fundamental property interest entitled to substantive due process protection.  We hold that it is not, and thereby join the great majority of courts of appeals that have addressed this issue. See Singleton v. Cecil, 176

26

F.3d 419, 425-26 (8th Cir.1999) (en banc) ('a public employee's interest in continued employment with a governmental employer is not so 'fundamental' as to be protected by substantive due process'); *McKinney v. Pate,* 20 F.3d 1550, 1560 (11th Cir.1994)(en banc) ('employment rights are not 'fundamental' rights created by the Constitution'); *Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1350 (6th Cir.1992) ('plaintiffs' state-created right to tenured employment lacks substantive due process protection'); *Huang v. Board of Governors of Univ. Of North Carolina,* 902 F.2d 1134, 1142 n.10 (4th Cir.1990) (professor's interest in position in university department 'is essentially a state law contract right, not a fundamental interest embodied in the Constitution'); *see also Local 342, Long Island Public Serv. Employees v. Town Bd. of Huntington,* 31 F.3d 1191, 1196 (2d Cir.1994) ('We do not think, however, that simple, state-law contractual rights, without more are worthy of substantive due process protection.'); *Kauth v. Hartford Ins. Co. of Illinois,* 852 F.2d 951, 958 (7th Cir.1988) ('In cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest . . .the plaintiff has not stated a substantive due process claim.'); *Lum v. Jensen,* 876 F.2d 1385, 1389 (9th Cir.1989) (finding 'no clearly established constitutional right to substantive due process protection of continue public employment' in Ninth Circuit as of 1984); . . .

Clearly, the majority of the Circuit Courts have decided that tenured public employment is not a "fundamental" property right subject to substantive due process protection. The Seventh Circuit recently reiterated its position in the case of Wozniak v. Conry, 236 F.3d 888 (7th Cir.2001), wherein a university professor brought a §1983 claim against the university's officials alleging violations of First Amendment and substantive and procedural due process claims when they stripped him of his academic tenure. Therein, the court stated at page 891:

Wozniak's remaining arguments are frivolous. He contends, for example, that the University's decision deprives him of 'substantive due process.' But this doctrine applies only to decision affecting fundamental civil rights. See *Washington v. Glucksberg,* 521 U.S. 702, 720-22, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).

These authorities are applicable in the case at bar.

Hanes' tenured public employment, academic or otherwise, is wholly a state-created contract right, and is not similar to other property interest that have been deemed fundamental under the Constitution. The reasoning of the above authorities, and the various Circuit Courts' opinions, including the Seventh Circuit are sound. Therefore, this Court

27

should grant summary judgment under both Count 3 and Count 4 of the Hanes' Amended
Complaint as to Hanes' substantive due process claims.

**D. The Defendants are entitled to summary judgment on Hanes' procedural due
process claims for alleged deprivation of his academic tenure rights without the
due process of law in 2000.**

Hanes' Amended Complaint alleges two separate and distinct alleged violations of
procedural due process.  The first alleged violation is that Hanes was deprived of his
academic tenure in 2000 when he accepted the position of Provost of Enrollment on a
permanent basis.

Hanes alleges in paragraph 16 of his Amended Complaint that he was "begged" by
the administration to accept the interim position of Assistant Provost of Enrollment
Management.   However, Hanes' sworn testimony indicates that he met with President
Summers, who offered him the interim position.  Hanes considered the position and then
declined as he did not want to work with the particular supervisor.  After that supervisor
announced his intent to leave the University, President Summer again asked Hanes if he was
interested in the interim position.  At that point, Hanes indicated that he was "willing to talk
about it".  Hanes then drafted a letter of February 21, 2000.  In that letter, Hanes specifically
reserved the right to return to teaching in the Broadcasting Department, should he <u>not</u> apply
for or accept the Assistant Provost of Enrollment position on a permanent basis.  (Thereby
implying that if he did apply for and accept the position on a permanent basis, he would not
retain the right to return to the Broadcasting Department.)

The University Manual specifically provided that:  "Tenure is not retained when
leaving a department/division/area of the University and entering another." [Appendix, p.
231, ¶2].  The provision had been in effect since at least 1983, during virtually all of Hanes'
employment period at the University.  In fact, it is the very Manual which creates the

28

procedures that Hanes used to obtain tenure status, in the first place. The Manual establishes the parameters of the rights of a tenure position, as well. It also contains the procedures for the continuing contract and annuals letters. Hanes' letter of February 21, 2000 indicates that Hanes was aware of the provision.

Pursuant to Hanes' deposition testimony, he did apply for the position on a permanent basis. At that point, he went through a day of interviews with various committees. Hanes was then offered the position by Provost Dowden. Salary was discussed. Hanes then advised Dowden that he would "sleep on it." The next day, Hanes returned to Dowden's office and accepted the position on a permanent basis. Subsequently, Hanes executed a contract entitled "Memorandum of Continuing Agreement" on August 16, 2000. Hanes did not reserve the right to return to the Broadcasting Department, as he had when he took the position on the interim basis, when he accepted the position on a permanent basis and entered into the contract of August 16, 2000. Hanes claims that his loss of academic tenure in August of 2000, deprived him of a property interest, without the due process of law. His argument is without merit.

Academic tenure and public employment is subject to the due process provisions of the Fourteenth Amendment. The Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) at page 408 U.S. 564, 576-77, and cases cited therein. However, in the case at bar, Hanes was not transferred or otherwise relocated to a new position with the University. Hanes accepted a position, on a interim basis, retaining his right to return to faculty and teaching at the University. He then ultimately applied for; was interviewed; was offered the job; and "slept on it" before accepting the new position on a permanent basis. Thus, resignation of his position on the faculty was implicit, in the contract itself, and as documented in his letter of February 21, 2000. Further, the University Manual made it clear

29

that Hanes would lose his tenure in the Broadcasting Department upon accepting the Assistant Provost position.  The Manual's policy on this issue has been consistent at least since 1983.

Employees' resignations are presumed to be voluntary.  <u>Alvarado v. Picur</u>, 859 F.2d 448, 453 (7th Cir.1988);  <u>Angarita v. St. Louis County</u>, 981 F.2d 1537, 1544 (8th Cir.1992); <u>Hargray v. City of Hallandale</u>, 57 F.3d 1560, 1568 (11th Cir.1995); and cases cited therein. The presumption prevails unless the plaintiff/employee comes forward with sufficient evidence to establish that the resignation was involuntarily extracted.  To determine whether a resignation was involuntarily given, the courts examine the surrounding circumstances to test the ability of the employee to exercise  free choice.  See <u>Angarita</u>, 981 F.2d at 1544; <u>Alvarado</u>, 859 F.2d at 453-54.

If an employee resigns on his own free will, even though prompted to do so by events set into motion by his employer, the employee relinquishes his property interest voluntarily and thus cannot establish that a governmental entity "deprived" him of the property interest within the meaning of the due process clause.  See <u>Stone v. University of MD Medical Sys., Corp.</u>, 855 F.2d 167, 173 (4th Cir. 1988); <u>Hargary v. City of Hallandale</u>, 57 F.3d 1560, 1567 (11th Cir.1995); and <u>Leheny v. City of Pittsburgh</u>, 183 F.3d 220, 227 (3rd Cir.1990).  In the case at bar, the totality of the circumstances, demonstrates that Hanes acted of his own free will in leaving the faculty Broadcasting Department.  Although he was offered another job with the University, that does not undermined his voluntary resignation and leaving of the faculty position.  Hanes testified at his deposition that he "assumed" he retained faculty tenure.  However, his "assumption" is undercut by his letter of February 21, 2000.   His statement that he retained the right to return to his faculty position if he did NOT apply for or obtain the permanent position, clearly implies the adverse situation was known to him, i.e.,

if he did obtain the permanent position he would not have the right to return to faculty. Further, Hanes' testimony demonstrates that no one at the University told him that he retained faculty tenure. He did not discuss the situation with any other faculty members who had accepted administrative positions. The University did not make any misrepresentations to Hanes in this regard. The Policy Manual clearly put Hanes on notice that he would lose his tenure in the Broadcasting Department if he left that Department.

The totality of the circumstances demonstrates that Hanes went through a lengthy application process, and even after being offered the job "slept on it" before accepting the position. Clearly, in the case at bar, Hanes has not overcome the presumption that his resignation from faculty was voluntarily obtained. Hanes resigned his position in August of 2000, under an offer made to him for another job. For over three years, he reaped the benefit of that deal. He now seeks to avoid any detriments. This Hanes cannot do. For additional authority see Graehling v. Village of Lombard, Illinois, 58 F.3d 295 (7th Cir.1995) at 298-99.

In summary, the only reasonable conclusion from the record in the case at bar is that Hanes made a voluntary decision to resign from his position on the faculty and thus relinquished his academic tenure. He has failed to overcome the presumption of voluntary resignation either by establishing duress, corrosion, or a misrepresentation theory. Therefore, Hanes was not deprived of any protected interest in his academic tenure by the University, or its individual employees. As such, those defendants are entitled to summary judgment as a matter of law on Hanes' due process claims in Counts 3 and 4 of his Amended Complaint in regards to his loss of academic tenure in 2000.

**E. The Defendants are entitled to summary judgment on Hanes' procedural due process claim in 2003.**

In the procedural due process clause, the Fourteenth Amendment forbids the state from depriving any person of life, liberty, property without the due process of law. To

31

sustain a claim under the due process clause a plaintiff must demonstrate: 1) a cognizable property interest; 2) a deprivation of that property interest; and 3) a denial of due process. See <u>Buttitta v. City of Chicago</u>, 9 F.3d 1198 (7th Cir.1993). The threshold question under such an examination is whether a property interest actually exists. See <u>Buttitta</u>, *ibid* at 1201. In general, a tenured professor, has a property right entitled to procedural due process protection. See <u>Wozniak v. Conry</u>, 236 F.3d 888 (7th Cir.2001) at 890. However, a property interest, even in tenure, is not constitutionally cognizable unless the person has "a legitimate claim of entitlement" to the benefits. A unilateral expectation of that benefit will not suffice. See <u>Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); <u>Buttitta v. City of Chicago</u>, *ibid* at 1202.

In the case at bar, the evidence demonstrates that Hanes did not have academic tenure in 2003. If he believed or "assumed" that he did, then he would simply have a unilateral expectation of a benefit, as the University did not agree with that expectation or assumption. In fact, and to the contrary the University policy specifically provided that Hanes lost his academic tenure when he accepted the position as Assistant Provost. (See Policy Manuals provisions regarding tenure; Appendix, p. 231). See also <u>Hermes v. Hein</u>, 742 F.2d 350, 355 (7th Cir. 1984).

However pursuant to Dowden's testimony at the hearing, Hanes was granted professional staff tenure out of respect for his years of service to the University, at the time he assumed the administrative position. Thus, Hanes was entitled to due process of law before he could be terminated by the University.

The due process clause requires that individuals have an opportunity to be heard at a meaningful time and in meaningful manner regarding the deprivation of life, liberty, or property. See <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed 2d 18 (1976).

32

In the case of <u>Wainscott v. Henry</u>, 315 F.3d 844 (7th Cir.2003), the court stated:

> Governmental employers must recognize their employees' property interest in continued employment. *Id*.  To respect this interest, a public employer must provide certain pre-termination procedures before removing an employee. These include (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell his side of the story. (Citations Omitted).

In the case bar, Hanes received due process prior to his termination.  However, Hanes was not initially subject to termination.  Hanes was initially subject to a transfer, which he refused to accept.  Administrative transfers, are not always subject to due process protection.  In the case at bar, Hanes' offered transfer would not be subject to such protection.

In <u>Bordelon v. Chicago School Reform Board of Trustees</u>, 233 F.3d 524 (7th Cir.2000), the court stated at page 530: "However, to be actionable under the due process clause, the deprivation of a public employee's property interest in continued employment must be more than *de minimis*."  In the case of <u>Huang v. Bd of Governors of the University of North Carolina</u>, 902 F.2d 1134 (4th Cir.1990), the court stated at page 1142:

> We agree, therefore, with the Eleventh Circuit, which sensibly concluded that the transfer of tenured professors from one department to another, without loss of rank or pay, does not implicate any property interest protected by the Due Process Clause. (Citations Omitted).  And this position is also consistent with that of the Fifth and Sixth Circuits, which have held that <u>certain intra-departmental demotions do not implicate property interests subject to procedural due process protection</u>. See *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir.1988) (demotion from department chairman to professor not a denial of a protected property interest); *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir.1985) (reduction of graduate student's teaching duties is not denial of a protected property interest).(emphasis added)

Also see <u>Gustafson v. Jones</u>, *ibid*; <u>Warfield v. Adams</u>, 582 F.Supp.111 (S.D.Ind.1984); <u>Brown v. Brienen</u>, 722 F.2d 360 (7th Cir.1983); <u>Bishop v. Wood</u>, 526 U.S. 341, 349, 96 S.Ct. 2074, 2080, 48 L.E.2d 684 (1976).  However, in the case bar, Hanes flatly refused to accept

33

the transfer or to resign from the University. Therefore, he was terminated for insubordination. Hanes pre-termination hearing on that matter was sufficient to meet due process clause requirements.

The Seventh Circuit, has established a three part test to determine whether due process is satisfied as to form and timing in a particular case. That test is a balancing test of three interests, and was established by the United States Supreme Court in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335, 96 S.Ct. 893, 963, 47 L.Ed.2d 18 (1976). As the court noted in <u>Buttitta v. City of Chicago</u>, *ibid*, that test requires a court to balance: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and 3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. In the case at bar, the pre-termination appeal procedures of the Committee of the Board of Trustees, satisfies the requirements of due process.

It is undisputed that the Policy Manual for the University provided for a pre-termination hearing before a Committee of the Board of Trustees for any faculty or professional staff tenure individuals terminated for cause. In the case at bar, Hanes availed himself to that procedure. He had a hearing before the Committee of the Board of Trustees, was represented by counsel, and had the opportunity to present witnesses and cross-examine witnesses. At the conclusion of that hearing, the Committee voted to uphold the President's recommendation of termination. Hanes was subsequently terminated from the University. Clearly, Hanes was provided notice, and the opportunity to be heard, as required by the due process clause, prior to his termination with the University.

34

Hanes alleges in his Complaint that the due process hearing was a "sham." However, Hanes has no evidence to support this allegation, nor is there any evidence contained in the record herein.  In the case of <u>Head v. Chicago School Reform Board of Trustees</u>, 225 F.3d 794 (7th Cir.2000), the court stated at page 804:

> Those serving as adjudicators are presumed to act in good faith, honestly, and with integrity. (Citations Omitted).  To overcome this presumption, a plaintiff must come forward with substantial evidence of actual or potential bias, such as evidence of a pecuniary interest in the proceeding, personal animosity toward the plaintiff, or actual prejudgment of the plaintiff's case.  (Citations Omitted).  Evidence of prior familiarity with the plaintiff or his or her situation, or even of involvement in the particular matter under consideration, is not adequate by itself to overcome the presumption.

Applying this legal principle to the case at bar, there isn't any evidence that any of the members of the Committee of the Board of Trustees had a pecuniary interest in the proceeding; personal animosity toward Hanes; or actually prejudged Hanes' case. Therefore, Hanes has failed to overcome the presumption of good faith that is afforded his adjudicators, the Committee of the Board of Trustees.

In the case at bar, Hanes was afforded procedural due process with the pre-termination hearing.  He was given the opportunity to be heard.  He was represented by counsel.  He has not overcome the presumption that the Committee of the Board of Trustees, who decided his case, acted in good faith, with honesty, and with integrity.  Therefore, this Court should grant summary judgment to the Defendants herein on Hanes' claims of violation of procedural due process.

## V.  STATE CLAIMS

At this juncture, as this Court should have granted summary judgment to the Defendants on all federal claims, the state claims should be dismissed without prejudice as they are pendant state claims.  However, should this Court consider those claims, the Defendants are entitled to summary judgment on the state claims as well.

35

### A.  The Defendants are entitled to summary judgment on Hanes' breach of contract claim.

The Plaintiff's breach of contract claim is contained within Count 5 of his Amended Complaint, paragraphs numbered 153-159.  He alleges that the Defendants breached his "academic tenure" contract.  Specifically, he alleges, in paragraph numbered 157, the Defendants breached the contract when they terminated him rather than allowing him to return to a tenured teaching position.  Plaintiff seeks to recover compensatory damages, as well as punitive damages against the Defendants herein.  Hanes does not allege that the University breached his contract with him when they refused to allow him to complete his annual contract as Assistant Provost of Enrollment.  His allegations are specifically limited to his denial of academic tenure, or the right to return to the Broadcasting Department.

For Plaintiff to establish a prima facie case of breach of contract, Hanes must establish that the Defendants were under contractual obligations with him and they violated those obligations.  See Pepsi Cola, Co. v. Steak & Shake, Inc., 981 F.Supp. 1149 (S.D. Ind.1997). In the case at bar, there is no breach of the Plaintiff's contract regarding his academic tenure.

As argued and set forth above, the Plaintiff voluntarily resigned and left his academic faculty tenure position and assumed the new position of Assistant Provost of Enrollment. His actions were voluntary.  Contrary to Plaintiff's assertion that he had no notice or was unaware that he was losing his academic tenure, the University Policy Manual specifically states that when one transfers to another department of the University, they do not maintain their tenure in that department.  This policy has been consistent in the Policy Manual throughout Hanes' employment at the University, and at least since 1983, and to the present. (See Affidavit of Dale Dowden; Appendix, p. 205). It is the very Manual which establishes and defines the tenure rights Hanes claims in this case.

36

Further, Hanes' letter of February 21, 2000, clearly indicates that he was aware that if he accepted the Assistant Provost position of Enrollment, on a permanent basis, that he would lose his academic tenure on the faculty. Therefore, Hanes cannot establish to this Court that he had any contractual rights with the University or the Defendant's herein, in reference to his academic tenure. The record and evidence in the case at bar is clearly against the Plaintiff, and devoid of any evidence of a meeting of the minds between the parties on this issue. Therefore, the Defendants are entitled to summary judgment on Hanes' breach of contract claim.

Additionally, Hanes cannot recover punitive damages against the Defendants herein on a breach of contract claim. I.C. §34-13-3-4 provides that punitive damages are prohibited against governmental entities.

**B. Defendants are entitled to summary judgment on Plaintiff's claims of promissory estoppel.**

Plaintiff's claims of promissory estoppel are set forth in Count 6 of his Amended Complaint filed herein and contained in paragraphs numbered 160-163 of the Amended Complaint. Therein, Hanes alleges that he "had no way of knowing" when he signed the contract for the position of Assistant Provost of Enrollment in 2000 that he was losing his academic tenure. (See Plaintiff's Amended Complaint, §161]. However, that allegation is not supported by the record in the case at bar. Clearly, the Policy Manual of the University, throughout the entire course of Hanes' employment, indicated that transfers between departments, divisions, or areas, within the University, resulted in the loss of tenure rights in the original position. Further, Hanes' letter of February 21, 2000, clearly demonstrates his knowledge of this provision and policy. Therefore, Hanes' claim for promissory estoppel should fail.

37

The elements of estoppel under Indiana law are: 1) representation or concealment of material facts; 2) representation made with knowledge of the facts, and the party to whom the representation is made must be ignorant of the matter; 3) the representation must be made within intent that the other party should act on it; and 4) the other party must be induced to act upon it to his or her detriment.  See U.S. v. Hodgekins, 832 F.Supp. 1255; (N.D.Ind.1993) affirmed 28 F.3d 6110 (7th Cir.1994); Mayflower Transit, Inc. v. Anarbor Warehouse Co., Inc., 892 F.Supp. 1134 (S.D. Ind.1995).  In the case at bar, there is no evidence that the Defendants made any knowing misrepresentation of material facts.  Nor, is there any evidence that they concealed from the Plaintiff a material fact.  The Plaintiff claims that the Defendants did not provide him notice that he was losing his academic tenure when he accepted the position of Assistant Provost of Enrollment.  However, the Policy Manual in effect throughout Hanes' entire employment with the University indicated just that, i.e., if one transfers from one department or section of the University, to another, they lose their tenure in the original position.  The fact that this was known to Hanes is evidenced by his letter of February 21, 2000.  In that letter, Hanes specifically retained the right to return to his academic position while he served as Interim Assistant Provost of Enrollment and if he did NOT apply for the position on a permanent basis.  Clearly, the adverse of that statement is true as well.  If Hanes did apply for and obtain the position on a permanent basis, he would lose faculty tenure, or the right to return to the Broadcasting Department, pursuant to the policy manual.  In the case at bar, the record is devoid of any evidence that the University in anyway deceived or misrepresented facts or wrongfully remained silent or concealed material facts from Hanes.  Therefore, the Defendants are entitled to summary judgment on Hanes' claim for promissory estoppel under Count 6 of his Amended Complaint.

38

## CONCLUSION

For all of the foregoing reasons, the Defendants would respectfully request that this Court enter an Order Granting Summary Judgment to them on the Plaintiff's Amended Complaint, and for all other relief proper in the premises.


Respectfully submitted,

KELLEY, BELCHER & BROWN


By:    s/ Thomas J. Belcher
       Thomas J. Belcher, #3773-53
       s/ Shannon L. Robinson
       Shannon L. Robinson, #15253-82
       Attorneys for Defendants
       301 West Seventh Street
       Post Office Box 3250
       Bloomington, Indiana  47402-3250
       Telephone:   812-336-9963
       Fax:         812-336-4588
       E-mail: tbelcher@kelleybelcherbrown.com
               srobinso@kelleybelcherbrown.com

39

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed electronically on the 16th day of June, 2005.  Notice of this filing was sent to the following by operation of the Court's electronic filing system:

Ida Coleman Lamberti
MAURER RIFKIN & HILL, P.C.
E-mail:  iclamberti@mrhlaw.com

                                        s/ Shannon L. Robinson
                                        Shannon L. Robinson